IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER SPENCER, AMARIA SPENCER, and ANJELEAH TELLIS, Minor, by her mother JENNIFER SPENCER,<br><br>Plaintiffs,<br><br>v.<br><br>MANUEL FIGUEROA, MARIO TAPIA, MARCY GOUGIS-SMITH, MARK RODRIGUEZ, Cook County Sheriff THOMAS DART, in his Official Capacity, COOK COUNTY, ILLINOIS, ALLISON SIMMONS, JUAN IBARRA, KENNY BECK, PANGEA VENTURES, LLC, AUSTIN VA, PORTFOLIO 8, LLC, CYM LIVING, LLC, CONSTRUCTION REX, LLC, and UNKNOWN EMPLOYEES OF SAID NAMED LLCs<br><br>Defendants. | Case No. 23-cv-04700<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jennifer Spencer, Amaria Spencer (Amaria), and Anjeleah Tellis (Tellis), a minor, by her mother Jennifer Spencer (Jennifer) (Plaintiffs), bring this suit against Defendants Manuel Figueroa, Maria Tapia, Marcy Gougis-Smith, Mark Rodriguez in their individual capacities (Defendant Officers),Cook County Sheriff Thomas Dart, in his official capacity, Allison Simmons, Juan Ibarra, Kenny Beck (Individual Defendants), Pangea Ventures, LLC, Austin VA, Portfolio 8, LLC, CYM Living, LLC, and Construction Rex, LLC (Corporate Defendants) alleging federal and

1

state claims. [101] (Fourth Amended Complaint or FAC). Before the Court are Defendants' motions to dismiss [107]; [108]; [109]; [110]; [111]; [113]; [118]; [129] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated herein, Defendant Beck and Ibarra's motions [107]; [129] are granted in part and denied in part, Defendant Simmons' motion is granted [108], the Corporate Defendants' motions are denied [109]; [110]; [111]; [118], and the Defendant Officers' motion [113] is granted.

I. **Background**

The following factual allegations are taken from the Fourth Amended Complaint [101] and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).[1]

On May 18, 2023, Jennifer rented an apartment at 1935 S. Homan Ave., #3B, in Chicago, Illinois. She lived there with her daughter, Tellis; her niece, Amaria, sometimes stayed at the apartment, and was doing so on that day. [101] ¶ 10. The apartment building at 1935 S. Homan Ave. was one of three buildings in a U-shaped courtyard building complex, each with its own street number. *Id.* ¶ 11. The buildings included 1931 S. Homan Ave., 1933 S. Homan Ave., and Plaintiffs' apartment building at 1935 S. Homan Ave. *Id.* The addresses were marked on all three buildings and the door of each apartment unit. *Id.* ¶ 12.

---

[1] The Court does not accept conclusory allegations as true in reviewing the sufficiency of a complaint. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations… are not entitled to [a] presumption of truth" under *Twombly* and *Iqbal*.)

2

On the morning of May 18, 2023, Amaria heard a loud banging on the door. *Id.* ¶ 14. She went to the door and saw Defendant Officers Figueroa, Tapia, Gougis-Smith, and Rodriguez banging on the door through the peephole. *Id.* ¶ 15. One of the Officers had a battering ram. *Id.* ¶ 16. Although Amaria was terrified, she opened the door. *Id.* ¶ 17. Defendant Tapia then drew his gun, frightening Amaria further. *Id.* ¶ 18. Defendants Figueroa, Tapia, Gougis-Smith, and Rodriguez entered the apartment with their guns drawn. *Id.* ¶ 19. Defendant Officers did not have a warrant or other court order to search or enter 1935 S. Homan Ave., #3B. *Id.* ¶¶ 20-21. The Officers did not have consent of the occupants of the unit to justify entry into their home. *Id.* ¶ 22. Defendant Figueroa, who did most of the questioning, kept referring to paperwork. *Id.* ¶ 24. Amaria feared for her life and was afraid she was being arrested. *Id.* ¶ 25. She was ordered to sit down and was not free to leave. *Id.* ¶¶ 26-27. The Officers began to search the apartment. *Id.* ¶ 28.

Defendant Figueroa told Amaria that they were there for an eviction and asked who lived in the apartment. *Id.* ¶ 29. Amaria told Figueroa he was in the wrong apartment, but the Officers remained in the apartment, questioning who lived in the unit. *Id.* ¶ 30. Amaria asked Figueroa who he was looking for, and he said he was looking for a person named Tereon. *Id.* ¶ 31. During the questioning, it became apparent that the Officers did not know what apartment they were in. *Id.* ¶ 32. Defendant Officers eventually acknowledged they had entered and searched the wrong apartment. *Id.* ¶ 33. Figueroa said he "should have checked the address". *Id.* ¶ 34.

3

After the Defendant Officers left, Amaria, distraught, contacted Jennifer, who was unable to leave work at that time. *Id.* ¶ 35. When Tellis returned home from school, she was also upset at what occurred. *Id.* ¶ 37.

Corporate Defendants Pangea, Austin VA, CYM, and Construction Rex manage or own, or are agents or lease employees for the managers or owners of the multi-unit courtyard apartment building at 1931-1935 S. Homan. *Id.* ¶ 38. Defendant Simmons, an employee of Pangea, signed and filed an eviction complaint in the Circuit Court of Cook County against Tereon Jordan, the tenant of 1931 S. Homan Ave., #3B, in December 2022. *Id.* ¶ 39. After obtaining the eviction order, the Corporate Defendants or their employees arranged for an eviction. *Id.* ¶ 40. Defendant Officers Figueroa, Tapia, Gougis-Smith, and Rodriguez were assigned to evict the tenants of 1931 S. Homan Ave., #3B, not 1935 S. Homan Ave., #3B. *Id.* ¶¶41-42.

Defendants Ibarra and Beck, employed by one of the Corporate Defendants, assisted the Defendant Officers when they arrived at the scene on May 18, 2023. *Id.* ¶ 43. Defendant Simmons was not present. *Id.* ¶ 44. The FAC asserts that Ibarra and Beck reached a mutual understanding with the Defendant Officers that they would enter 1935 S. Homan Ave, #3B, even though there was no court order for that location. *Id.* ¶ 46. Ibarra and Beck gave the Officers keys to the door at 1935 S. Homan Ave, and to #3B specifically. *Id.* ¶ 48. Ibarra opened the main door to the 1935 S. Homan building for the Defendant Officers, with the understanding that the four officers were going to enter 1935 S. Homan Ave., #3B. *Id.* ¶ 49.

4

After the search, Defendant Gougis-Smith, clutching her notes with the correct address, laughed about entering the wrong apartment, and reminded the other Defendant Officers that she had told them they were supposed to evict a tenant from building 1931. *Id.* ¶ 53. The Defendant Officers then returned to the courtyard and told Ibarra, and possibly Beck, that they had searched the wrong apartment. *Id.* ¶ 54. Ibarra then walked with the Officers to 1931 S. Homan Ave. *Id.* ¶ 55. For unknown reasons, and in violation of the Sheriff's directives, Defendant Officers did not create reports of their entry into Plaintiffs' home. *Id.* ¶ 56. The FAC alleges that the Officers' failure to report was an attempt by the Defendant Officers to cover up their misconduct. *Id.* ¶ 57.

Plaintiffs bring eight counts: unconstitutional entry and search under 42 U.S.C. § 1983 against the Defendant Officers and Individual Defendants (Count I), use of excessive force under 42 U.S.C. § 1983 against the Defendant Officers (Count II), unlawful detention under 42 U.S.C. § 1983 against the Defendant Officers (Count III); Conspiracy under 42 U.S.C. § 1983 against the Defendant Officers and Individual Defendants (Count IV), state assault against the Defendant Officers and Sheriff Dart (Count V), state trespass against all Defendants (Count VI), Indemnification against Sheriff Dart (Count VII), and Indemnification against Cook County (Count VIII). The FAC seeks compensatory damages for emotional distress, special damages, punitive damages, and attorneys' fees. Before the Court are Defendants' motions to dismiss for failure to state a claim, in whole or in part, under F. R. Civ. P. 12(b)(6). *See* [107]; [108]; [109]; [110]; [111]; [113]; [118]; [129]. For the

reasons explained below, the Court grants in part and denies in part [107] and [129], denies [109]; [110]; [111]; [118] and grants [108] and [113].

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

#### A. Defendant Officers

Plaintiffs sue the Defendant Officers in their individual, not official, capacities. Sheriff Dart is named in his official capacity. The Defendant Officers argue that Plaintiffs' state law claims must be dismissed because they are considered state employees for purposes of effectuating an eviction and are thus protected by immunity. [113] at 4-7. Plaintiffs respond that these Defendants are not immune because they are not state employees, but rather county employees. Alternatively, Plaintiffs argue that the Defendant Officers were acting outside the scope of their authority, and they are thus unprotected. [134] at 4-7.

Under Illinois law, sheriff deputies are classified as county, not state officials. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). However, county sheriff officers act as an arm of the state when performing certain functions. *Id*. Specifically, when a deputy sheriff executes orders of the state court, he may be an agent of the state for purposes of Illinois sovereign immunity. *Alencastro v. Sheahan,* 297 Ill.App.3d 478, 232 Ill.Dec. 665, 698 N.E.2d 1095, 1101 (1998). In order to determine whether the Defendant Officers qualify for Illinois sovereign immunity, the Court must determine that "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty

7

alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) ... the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Sheahan*, 270 F.3d at 441 (internal quotations and citations omitted). Significantly, "the fact that the agent's act was not specifically authorized is not dispositive, so long as it is of the general kind he is authorized to perform, and is motivated, at least in part, by a purpose to serve the principal." *Id*. at 442. If there are no allegations that the defendant was acting for a purpose outside of his employment, even willful and wanton conduct does not take the conduct outside the defendant's scope for purposes of sovereign immunity. *Id*. In sum, for purposes of sovereign immunity, the critical inquiry is whether the Defendant Officers were acting beyond the scope of their authority when effectuating orders of the court.

Plaintiffs assert the Defendant Officers acted outside the scope of their employment. The Court disagrees. The facts as alleged satisfies the Court that the Defendant Officers—even accepting as true that they acted in a careless and even egregious manner—were acting within the scope of their authority. The FAC alleges that the Defendant Officers were attempting to execute a valid eviction order, thus within the scope of their employment. *Sheahan*, 270 F.3d at 441. Importantly, "nothing in the complaint would indicate that the deputies were motivated by a purpose other than executing the … order…" *Sheahan*, 270 F.3d at 442. The Court therefore finds that the officers are protected by Illinois sovereign immunity. The state law claims must be dismissed.

8

Indeed, the Illinois Court of Claims Act grants that court with "exclusive jurisdiction to hear and determine ... [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit...." 705 ILCS 505/8(d). Plaintiffs disagree, citing cases where the Illinois Court of Claims reasoned that it has no jurisdiction over the Sheriff or his officers. *See Christopher Kennedy, Claimant, v. Illinois Dept. of Corrections, Respondent*, 61 Ill. Ct. Cl. 302, 302-303 (2009); *Maria Alencastro, Claimant, v. The State of Illinois, Respondent*, 54 Ill. Ct. Cl. 457-59, 462 (2001) (The Illinois Court of Claims does not have jurisdiction over the Sheriff or its employees but allows for claim against the State seeking State funds for wrongful conviction); *see Matthew J. Sherry, Claimant, v. The State of Illinois, Respondent,* 55 Ill. Ct. Cl. 437, 440 (2002). This Court is bound by Seventh Circuit precedent, as discussed *supra,* not the Illinois Court of Claims. In short, although the Plaintiffs' position that the Court of Claims disagrees it has jurisdiction to hear cases against the Sheriff or its employees is well taken, this Courts' hands are tied. Plaintiffs seem to be foreclosed from bringing state law claims for this type of claim in any forum. *See Alencastro*, 54 Ill. Ct. Cl. 459 ("The Court of Claims Act, which establishes our core jurisdiction, grants this court jurisdiction to hear and determine only certain claims against the State (705 ILCS 505/8) and grants no authority over claims against counties, county officials or county employees . . . This statutory court recognizes its statutory limitations."). But this Court remains bound by precedent.

The Defendant Officers' motion to dismiss [113] is granted. Counts V and VI are dismissed without prejudice. Count VII (indemnification) against Sheriff Dart in his official capacity remains, as the federal claims against the Defendant Officers (Counts I-IV) remain pending.

### B. Individual Defendants

The Court next turns to the private individual Defendants. The Individual Defendants Beck, Ibarra and Simmons are named in Count I (unconstitutional search and seizure), Count IV (federal conspiracy), and Count VI (state trespass). Ibarra and Beck argue that Plaintiffs fail to state factual allegations that establish they are liable for unconstitutional misconduct or state trespass. [107] at 4-6; [129] at 4-6. Simmons argues that Plaintiffs have failed to plead that she is responsible for any misconduct alleged. [108] at 4-6. Plaintiffs respond that Defendants Ibarra and Beck walked the Defendant Officers to the wrong door (1935 S. Homan Ave.) and opened the door. [133] at 16.[2] Plaintiffs further argue that Ibarra and Beck were aware of what was going to happen next. *Id*. Plaintiffs respond that Simmons faces liability based on her failure to appear at the scene of the eviction, and it was foreseeable to her that the Defendant Officers would enter the wrong apartment. *Id*. at 19. The Court addresses each argument in turn.

---

[2] The FAC alleges that Ibarra opened the main door for the Defendant Officers at 1935 S. Homan Ave., and that Amaria Spencer opened the door to #3B. [101] ¶¶ 49; 17. The FAC does not allege that Beck opened any door.

10

> i. *Defendants Beck and Ibarra*

As to Count I, because Beck and Ibarra are not state actors for purposes of Section 1983, the Court must apply the state actor doctrine. Under the test, "a private entity may qualify as a state actor when… [they] exercise powers traditionally exclusively reserved to the state". *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477. Generally, "very few" exceptions fall into this category. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185. Specifically, the Supreme Court has stated the few limited circumstances are "(i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809, 139 S. Ct. 1921, 1928, 204 L. Ed. 2d 405 (2019) (cleaned up). The only circumstance applicable here is where the government actor "acts jointly" with the private entity.

Count IV alleges a conspiracy under Section 1983. Non-state actors may be found to act under color of state law, and thus liable under § 1983 through a conspiracy theory, if Plaintiffs demonstrate that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiffs of their constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal citations and quotation marks omitted). However, *mere allegations* of a joint action or a conspiracy are not enough to demonstrate the private defendant

11

acted under color of state law and will not survive a motion to dismiss. *Id*. (emphasis added), citing *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998).

State trespass is the invasion of an individual's exclusive possession and physical condition of their land. *Lyons v. State Farm Fire & Cas. Co.,* 349 Ill.App.3d 404, 285 Ill.Dec. 231, 811 N.E.2d 718, 725 (Ill.App.2004). A plaintiff need not show total deprivation of his land, instead a claim can be premised "on the defendant having caused a thing … to enter … the land of another … through a negligent act." *City of Evanston v. Texaco, Inc.,* 19 F. Supp. 3d 817, 826–27 (N.D. Ill. 2014) (internal citation and quotation marks omitted).

Here, Beck and Ibarra are alleged to have (1) handed keys for 1935 S. Homan Ave. #3B to the Defendant Officers and (2) led them to the specific (wrong) address. Ibarra opened also the main door to the building. Neither Beck nor Ibarra entered the unit with the Defendant Officers. These allegations, by themselves, do not plausibly transform Beck and Ibarra from private individuals into state actors for purposes of Count I. Neither Beck nor Ibarra is alleged to have possessed any sort of control over the Defendant Officers. There are no allegations that plausibly allege that Beck or Ibarra were engaged in joint activity with the Defendant Officers. Considering the Supreme Court's guidance that very few exceptions fall into the state actor doctrine, the Court declines to find Plaintiffs have plausibly alleged that Beck and Ibarra acted jointly with the Defendant Officers. Count I is dismissed as to Beck and Ibarra.

As to Count IV, conspiracy to violate Plaintiffs' civil rights, the Court understands this a bit more broadly. The FAC alleges that Beck and Ibarra reached a "mutual understanding" with the Defendant Officers to enter the wrong apartment. This is the basis to allege a conspiracy. It is tempting to read this as a speculative and conclusory assertion that does not support a plausible allegation. Indeed, actual evidence of an agreement will be necessary to establish liability. But conspiracy allegations are difficult to allege at the start of a case. *See e.g. Runnion ex rel. Runnion v Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 528 (7th Cir. 2015) (plaintiffs are not required to plead facts which they cannot access without discovery). Taking the facts alleged in the light most favorable to Plaintiffs, as the Court must at this stage, the Individual Defendants could have conspired with Defendant Officers to violate their constitutional rights.

The Court next turns to the trespass claim. Here, neither Beck nor Ibarra entered the apartment. However, they are alleged to have aided and abetted the Defendant Officers' trespass by furnishing them a key and leading them to the wrong building. Under the motion to dismiss standard, these allegations are sufficient.

The Court thus grants in part and denies in part Defendant Beck and Ibarra's motions to dismiss [107]; [129]. Count I is dismissed as to Beck and Ibarra. Their motion is otherwise denied.

   *ii. Defendant Simmons*

Defendant Simmons petitioned the state court for an order to evict Tereon Jordan from 1931 S. Homan Ave., #3B. Plaintiffs allege Simmons is the receiver, and

13

therefore obligated to have monitored that eviction. Simmons argues Plaintiffs fail to allege that she was involved in any way with the Defendant Officers or any of their actions. [108] at 4-5. Plaintiffs respond that it was foreseeable to Simmons that law enforcement officers could enter the wrong apartment. [133] at 18-19.

Here, the FAC is devoid of any allegations that Simmons participated in the eviction. She petitioned for an eviction order naming the correct tenant. No allegations support that she is responsible for the Defendant Officers' unconstitutional search and seizure, that she conspired with them, or that her conduct caused them to trespass. The Court disregards speculative allegations, including that it was foreseeable that the law enforcement officers would enter the wrong building because Simmons was not present. Plaintiffs must plead *more* than a sheer possibility that a defendant has acted unlawfully to survive the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court therefore dismisses all claims against Simmons.

Defendant Simmons' motion to dismiss [109] is granted.

**C. Corporate Defendants**

The Corporate Defendants argue that Plaintiffs allege vague, generalized, and conclusory allegations against them, violating F.R.C.P. 8. [109] at 1-4; [110] at 1-4; [111] at 1-4; [118] at 1-4. Plaintiffs respond that Rule 8 does not require pleading facts that they cannot know without discovery and that the FAC sufficiently alleges *respondeat superior*. [133] at 5-11. Group pleading that refers to Defendants

14

collectively is not *per se* forbidden. *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). Indeed, Plaintiffs do not violate Rule 8 so long as their complaint "provides sufficient detail to put the defendants on notice of the claim". *Id.*

This is not a case where Defendants are in the dark as to the allegations against them. Here, the Corporate Defendants are named in Count VI, state trespass, under a *respondeat superior* theory. The FAC alleges that the various Corporate Defendants employ Defendants Beck, Ibarra and Simmons (now dismissed), and they are thus liable for their employees' actions. This is plausible. The parties are in the midst of discovery to better define the roles of the Corporate Defendants—whether each is an owner, manager, employer or played some other role. The Court therefore denies the Corporate Defendants' motions to dismiss. [109]; [110]; [111]; [118].

### III. Conclusion

For the stated reasons, Defendant Officers' motion to dismiss is granted [113]. Counts V and VI are dismissed without prejudice as to the Defendant Officers. Defendants Beck and Ibarra's motions to dismiss [107]; [129] are granted in part and denied in part; Defendant Simmons' motion to dismiss is granted [108]. Count I is dismissed as to Defendants Beck and Ibarra. Counts I, IV, and VI are dismissed as to Defendant Simmons. The Corporate Defendants' motions are denied. [109]; [110]; [111]; [118]. Status hearing set for 1/9/25 in courtroom 1225 at 9:30 am.

E N T E R:

Dated: December 12, 2024

MARY M. ROWLAND
United States District Judge